**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-02777-001-TUC-RM (DTF) |
| Plaintiff, | **ORDER** |
| v. | |
| Yanco Joel Escobar-Mariscal, | |
| Defendant. | |

On February 6, 2020, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R") (Doc. 30) recommending that this Court deny Defendant's Motion to Dismiss the Indictment with Prejudice (Doc. 20). Defendant filed an Objection to the R&R (Doc. 34), the Government filed a Response to the Objection (Doc. 37), and Defendant filed a Reply (Doc. 42). For the following reasons, the R&R will be overruled, the Defendant's Objection granted, and the Motion to Dismiss granted insofar as the indictment will be dismissed without prejudice.

## I.    Background

On November 26, 2019, Defendant was indicted on one count of Illegal Reentry of a Removed Alien in violation of 8 U.S.C. § 1326(a). (Doc. 19.) At Defendant's detention hearing on October 15, 2019, Magistrate Judge Macdonald ordered Defendant released with conditions. (Doc. 6.) The same day, the Government appealed the release order to

1    this Court. (Doc. 9.) On October 30, 2019, this Court affirmed Judge Macdonald's release

2    order. (Docs. 14, 15.) Due to a previously lodged immigration detainer, Defendant was

3    transferred to the custody of Immigration and Customs Enforcement ("ICE"). (Doc. 37 at

4    2.) Defendant did not appear for his scheduled arraignment on November 15, 2019 before

5    Magistrate Judge D. Thomas Ferraro. (Doc. 18.) At that hearing, defense counsel

6    explained that Defendant had been deported. (Doc. 37 at 2.) The arraignment was

7    vacated, and an arrest warrant issued for Defendant. (Docs. 18, 19.)

8       On December 2, 2019, Defendant filed the pending Motion to Dismiss. (Doc. 20.)

9    Defendant argues that the indictment should be dismissed with prejudice because the

10    Government violated Defendant's right to an individualized determination of release

11    under the Bail Reform Act ("BRA") by deporting him. (*Id*.) Defendant further argues that

12    his deportation violated his Sixth Amendment right to assistance of counsel. (*Id*.)

13    Defendant urges the Court to exercise its supervisory power to dismiss the indictment to

14    remedy the statutory and constitutional violations resulting from Defendant's deportation

15    during his criminal proceedings. (*Id*.)

16       The Government opposes dismissal. (Doc. 23.) The Government argues that there

17    is no statutory conflict between the BRA's requirement that criminal defendants be

18    released under certain circumstances pending resolution of their cases, and ICE's

19    simultaneous detention and removal of removable aliens pursuant to the Immigration and

20    Nationality Act ("INA"). (*Id*.) The Government, citing cases from the Third, Sixth, and

21    D.C. Circuits, argues that the weight of authority dictates a finding that the BRA's release

22    provisions do not conflict with ICE's authority to detain and remove a Defendant under

23    the INA. (*Id*.); *see United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019),

24    (pre-trial release does not preclude pre-removal detention, and the BRA and INA do not

25    conflict); *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019)

26    ("Detention of a criminal defendant pending trial pursuant to the BRA and detention of a

27    removable alien pursuant to the INA are separate functions that serve separate purposes

28    and are performed by different authorities."); *United States v. Veloz-Alonso*, 910 F.3d

266, 270 (6th Cir. 2018) ("ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination."). The Government contends that Defendant, as well as some other district courts, have misinterpreted the INA departure regulations that restrict an alien's departure if "departure would be prejudicial to the interests of the United States." (*Id*. at 8); *see* 8 C.F.R. §§ 215.2(a), 215.3(g); *United States v. Baltazar-Sebastian*, 429 F. Supp. 3d 293 (S.D. Miss. 2019); *United States v. Blas*, No. CRIM. 13–0178–WS–C, 2013 WL 5317228, at *7 (S.D. Ala. Sept. 20, 2013); *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1177–78 (D. Or. 2012). The Government contends that these regulations should be interpreted to "refer to aliens who try to depart from the United States voluntarily, not aliens who are subject to final orders of removal." (Doc. 23 at 8.) The Government further maintains that Defendant's removal has not violated his Sixth Amendment right to counsel. (*Id*. at 14.)

On February 5, 2020, Judge Ferraro heard oral argument on the Motion to Dismiss. (Docs. 29, 34-1.) At that hearing, defense counsel stated that Defendant's whereabouts were unknown and that she had not been able to contact her client. (Doc. 34-1.) Defense counsel further argued that ethical obligations prevented her from disclosing to the Court more detailed information about her contacts with Defendant. (*Id*. at 8-9); *see also* Arizona State Bar Ethics Opinion 95-02.

After the hearing, Judge Ferraro issued the pending R&R recommending that the Motion to Dismiss be denied because Defendant had failed to carry his burden to demonstrate that the indictment should be dismissed to "remedy a constitutional or statutory violation" or "deter future illegal conduct." (Doc. 30.)[1] The R&R finds that "defense counsel offered no evidence at the February 5, 2020 hearing that she was unable to communicate with her client" and that "there is no evidence that the defendant has been prevented from returning to the United States to make his court appearances or consult with his counsel." (*Id*. at 2.)

---

[1] At the February 5, 2020 hearing, both the Government and the Defendant opposed dismissal without prejudice.

1   Defendant's Objection contends that defense counsel need not disclose
2   confidential information in order for the Court to determine that the indictment should be
3   dismissed. (Doc. 34 at 5-6.) Defendant argues that his removal from the United States
4   violates his release order and his Sixth Amendment right to counsel, and that dismissal
5   with prejudice is the appropriate remedy for the constitutional violation and to promote
6   respect for the BRA. (*Id*. at 6-10.)

7       The Government's Response argues that (1) there is no statutory conflict between
8   the BRA and the INA (Doc. 37 at 4-9); (2) Ninth Circuit precedent does not warrant
9   dismissal (*id*. at 9-12); (3) the immigration regulations do not warrant dismissal (*id*. at 12-
10  14); and (4) Defendant's removal did not violate his Sixth Amendment right to counsel
11  (*id*. at 17-20).

12      Defendant's Reply argues, in part, that: (1) Defendant's removal prejudiced the
13  United States (Doc. 42 at 3); (2) the Government's argument that it can coordinate with
14  the Department of Homeland Security to parole Defendant into the country is belied by
15  its inability to coordinate with that agency to prevent Defendant's deportation in the first
16  place (*id*. at 4); (3) the magistrate judge should have given more weight to the fact that
17  Defendant's failure to appear and communicate with his attorney was directly related to
18  the Government deporting him (*id*. at 6); and (4) the burden to procure Defendant should
19  not shift to his own attorney (*id*.).

20      **II.    Standard of Review**

21      A district judge must "make a de novo determination of those portions" of a
22  magistrate judge's "report or specified proposed findings or recommendations to which
23  objection is made."  28 U.S.C. § 636(b)(1). "A judge of the court may accept, reject, or
24  modify, in whole or in part, the findings or recommendations made by the magistrate."
25  *Id*. "[A] district court has discretion, but is not required, to consider evidence presented
26  for the first time in a party's objection to a magistrate judge's recommendation." *United*
27  *States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000).
28  . . . .

### III. Discussion

As an initial matter, the Court notes that the out-of-circuit cases cited by the Government are not binding on this Court. *See, e.g., Soriano Nunez*, 928 F.3d at 245; *Vasquez-Benitez*, 919 F.3d at 552; *Veloz-Alonso*, 910 F.3d at 270. This Court agrees—and has previously recognized—that the tension seen in this and numerous other cases in this district "between lawful release orders" under the BRA and "actions taken by ICE" under the INA does not result "from statutory language" in the BRA and INA. *United States v. Lutz*, Case No. CR19-00692-TUC-RM(BGM), 2019 WL 5892827, at *2 (D. Ariz. Nov. 12, 2019). Rather, that tension results "from the failure of two article II agencies to coordinate their respective efforts." *Id.*

Furthermore, the relevant issue here is not whether Defendant's detention under the INA conflicts with his release under the BRA but, rather, whether the Government may proceed with its prosecution after removing Defendant from the United States. Not one of the cases cited by the Government holds that it may do so, and the Court finds that it cannot. There are obvious problems with the Government's efforts to continue its prosecution of Defendant after his removal. First, Defendant's continued prosecution following his removal interferes with his Sixth Amendment right to counsel. Second, Defendant's removal from the country creates logistical problems for the administration of justice that the Government has not addressed to the Court's satisfaction.

### 1. Defendant's Deportation Violates his Sixth Amendment Right to Counsel

As this Court has found in other similar cases, Defendant's removal during the pendency of his criminal proceedings violates his Sixth Amendment right to counsel because it interferes with his ability to communicate with and consult with counsel regarding his case. *See United States v. Calderon-Lopez*, Case No. CR19-03027-RM(DTF), 2020 WL 2616034, at *2-3 (D. Ariz. May 22, 2020); *United States v. Munoz-Garcia*, Case No. 19-01670-TUC-JGZ(EJM), 2020 WL 1929204, at *3 (D. Ariz. Apr. 21, 2020); *Lutz*, 2019 WL 5892827 at *5.

At oral argument before Judge Ferraro, defense counsel indicated that she had not

1   succeeded in contacting Defendant. The exchange between defense counsel and Judge

2   Ferraro went as follows:

3           THE COURT: All right. And with regard to – this matter was on the last time, and
        I postponed it to give you an opportunity to reach out. You were going to advise
4           the Court of what you did to try to main -- reach out and have contact with your
        client. Have you been able to have contact with him?
5
        MS. MUNOZ : Your Honor, I have not been able to have contact with my client.
6

7   (Doc. 34-1 at 3.) Defense counsel then stated that Ethical Rule 1.6, as interpreted by

8   Arizona State Bar Ethics Opinion 95-02, forbade her from disclosing to the Court further

9   information relating to her client's whereabouts or her last contacts with him. (Doc. 34.)

10          Ethics Opinion 95-02 concludes that:

11          A lawyer questioned by the court concerning the availability of his or her
        client for trial must maintain the confidentiality of all "information relating
12          to the representation[."]  Counsel may disclose the intention of the client
        not to appear, but only if he or she has actual knowledge that the client will
13          do so and the act is willful and not the result of mistake or inadvertence.
14

15          Defense counsel's representation to Judge Ferraro that she was unable to contact

16  her client following his removal is sufficient to support a finding that Defendant's

17  removal has interfered with his attorney-client relationship and violated his Sixth

18  Amendment right to counsel. Defense counsel was not required to disclose confidential

19  information concerning her representation in order to show such interference. Informing

20  the Court that communication was not achieved following Defendant's deportation was

21  sufficient.[2]

22          Counsel's inability to contact Defendant following his deportation interferes with

23  his Sixth Amendment right to consult with counsel, to review the evidence against him,

24  and to prepare a defense to the charge. *See United States v. Resendiz-Guevara*, 145 F.

25  Supp. 3d 1128, 1138 (M.D. Fla. 2015) (concluding that the defendant's deportation

26  presented a clear challenge to his ability to consult with counsel, to review the evidence

27  against him and to prepare a defense); *Calderon-Lopez*, 2020 WL 2616034 at *2-3

28  _____
[2] The Government's arguments to the contrary do not cite authority dictating a different
result. (Doc. 37 at 17-20.)

(same); *see also Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014) ("When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel, that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant.") The Court notes that Defendant's nonappearance in this case is not the result of his "willfulness," or even inadvertence or mistake, but is the result of the Government's decision to deport him during the pendency of his criminal proceedings; this fact weighs against requiring Defendant to provide additional information to support the Motion to Dismiss.

### 2.  The Possibility of Parole Does Not Remedy the Constitutional Violation

Defendant's removal from the country creates logistical problems for the administration of justice that the Government has not addressed to the Court's satisfaction. *See Baltazar-Sebastian*, 2019 WL 6917898 at *10, 13. The Government states that it has offered to parole in Defendant. (Doc. 37 at 18, n. 4.) The Government then clarifies that "it is ultimately [the Department of Homeland Security's] decision whether to parole in a defendant." (*Id*. at 18-19, n.4). Given that the prosecuting arm of the Government was not able to coordinate with ICE to delay or prevent Defendant's removal pending the conclusion of his criminal proceedings, the Court is unclear as to how the Government intends to coordinate Defendant's parole into the country, especially given defense counsel's inability to communicate with Defendant.

Moreover, the Court finds troubling the implication that defense counsel would presumably need to participate in the coordination of Defendant's parole into the United States on behalf of the Government. The Government does not explain how it would coordinate Defendant's parole without communicating with Defendant through defense counsel, and it has not suggested that it has the means to contact or locate Defendant other than through his counsel. The Court is concerned that, even if Defendant did have contact with his counsel, an expectation that defense counsel would help facilitate Defendant's parole into the United States in order to further the Government's interest in prosecuting him would undermine the adversarial system upon which criminal justice

depends. *See United States v. Cronic*, 466 U.S. 648, 655-57 (1984) ("[I]f the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.") Defendant's deportation is qualitatively different from, for example, his out-of-custody presence in another state, where the Government could likely reach or locate him in the event of his nonappearance. *But see United States v. Perez-Canez*, No. CR-18-00229-PHX-JJT, at 5 (D. Ariz. Mar. 2, 2020) (stating that removed defendant was in "no different a position than many domestically released defendants"). Furthermore, although the Government states that it is not seeking to try Defendant in absentia or conduct any hearings outside his presence, it has offered no suggestion regarding how it would avoid a Speedy Trial Act violation were this Court to deny Defendant's Motion to Dismiss. *See Munoz-Garcia*, 2020 WL 1929204 at *3.

### 3.  Dismissal of the Indictment without Prejudice is the Appropriate Remedy

A district court may dismiss an indictment under its supervisory powers for three reasons: (1) to remedy a constitutional or statutory violation; (2) to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or (3) to deter future illegal conduct. *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). Dismissal is appropriate when "the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser remedial action is available." *Id*. at 1092. If ICE jeopardizes a district court's ability to try a defendant by removing him, "the district court may craft an appropriate remedy." *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015).

"Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364 (1981). The constitutional infringement must have "some adverse effect upon the effectiveness of counsel's representation or [produce] some other prejudice to the defense." *Id*. at 365. "One of the three traditional ways to show prejudice is by demonstrating that the defense was impaired." *United States v. Corona-Verbera*, 509

1    F.3d 1105, 1116 (9th Cir. 2007).

2            The Court finds that dismissal of the indictment is appropriate because the

3    Government has violated Defendant's Sixth Amendment right to counsel by deporting

4    him during the pendency of his criminal proceedings, and no lesser remedial action can

5    remedy the violation. As Defendant is unable to prepare a defense to the charges without

6    being able to communicate with defense counsel, Defendant has shown substantial and

7    actual prejudice resulting from his deportation. Defendant's deportation has

8    "disadvantaged [him] in preparing a defense in [his] case, jeopardizing this Court's

9    ability to fairly try [him]." *Munoz-Garcia*, 2020 WL 1929204 at *3 (dismissing

10   indictment with prejudice).

11           The Court further finds that dismissal without prejudice is a lesser remedial action

12   than dismissal with prejudice that will adequately remedy the constitutional violation.

13   *Barrera-Moreno*, 951 F.2d at 1092. Dismissal without prejudice will end the case.

14   Should Defendant become available and be prosecuted on these charges in the future, the

15   parties will be free to raise arguments related to the prejudice resulted to Defendant from

16   deportation in this case.

17           The Court has reviewed Judge Ferraro's Report and Recommendation, the parties'

18   briefs, and the record.  The Court finds that dismissal of the indictment without prejudice

19   at this time, is the proper remedy for the violation of Defendant's Sixth Amendment right

20   to counsel.

21           Accordingly,

22           **IT IS ORDERED** that the Report and Recommendation (Doc. 30) is **rejected**.

23           **IT IS FURTHER ORDERED** that Defendant's Objection (Doc. 34) is **granted**.

24   . . . .

25   . . . .

26   . . . .

27   . . . .

28   . . . .

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Indictment (Doc. 20) is **granted**, insofar as the indictment against Defendant Yanco Joel Escobar-Mariscal in the above-captioned case is **dismissed without prejudice**.   The Clerk of Court is directed to close this case.

Dated this 27th day of July, 2020.

_____

Honorable Rosemary Márquez
United States District Judge